IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MISSOURI PROTECTION & ADVOCACY SERVICES, | ) ) ) |
| Complainant, | ) ) |
| vs. | ) Case No.: 04-4064-CV-C-NKL ) |
| MISSOURI DEPT. OF MENTAL HEALTH, and DORN SCHUFFMAN, in his official capacity as DIRECTOR of the DEPT. OF MENTAL HEALTH, | ) ) ) ) ) |
| Defendants. | ) |

## MOTION FOR SUMMARY JUDGMENT

COMES NOW Plaintiff Missouri Protection and Advocacy Services (MO P&A), by and through the undersigned counsel, and hereby files its Motion for Summary Judgment pursuant to Federal Rule 56 and Local Rule 56.1.

## INTRODUCTION

Missouri Protection and Advocacy Services (MO P&A) brought this action in order to compel Defendants to provide a Mortality and Morbidity Report regarding the death of James Riley. MO P&A is entitled to receive the Mortality and Morbidity Report pursuant to federal law. MO P&A is the "eligible system" for the State of Missouri as defined by the PAIMI Act. *42 U.S.C. § 10801, et seq.* The PAIMI Act authorizes MO P&A, as the eligible system, to access records of persons with mental illness.

As the eligible system in Missouri, MO P&A investigated the death of Mr. Riley. Mr. Riley died on June 21, 2001. Mr. Riley was a resident of Fulton State Hospital. Fulton State Hospital is a hospital for persons with mental illness operated by the Missouri Department of

Mental Health.

The Mortality and Morbidity Report was generated as a result of the death of Mr. Riley and is in the possession of Defendants. MO P&A requested a copy of the Mortality and Morbidity Report from Defendants as part of its investigation. Defendants did not provide MO P&A with the Mortality and Morbidity Report, because they claim it "is a confidential internal peer review document that is not available for distribution outside of the department." *Exhibit C*.

By its refusal to provide MO P&A the requested documents Defendants have violated federal statutes establishing the access authority of MO P&A, as well as relevant case law. The Third Circuit determined that peer review documents fall within the definition of records under the PAIMI Act. *Pennsylvania Protection and Advocacy v. Houstoun,* 228 F.3d 423 (3rd Cir. 2000).

Missouri Protection and Advocacy Services requests this court to compel Defendants to provide the Mortality and Morbidity Report in regard to the death of James Riley to them.

2

**STATEMENT OF UNCONTROVERTED FACTS**

1. Mr. Riley was a resident of Fulton State Hospital (FSH) when he died. FSH is a hospital for persons with mental illness operated by the State of Missouri, specifically by the Missouri Department of Mental Health. *Complaint/ Defendants' Answer, p. 1.*

2. Defendants have not provided MO P&A with the Mortality and Morbidity Report regarding the death of James Riley after being requested to do so. *Complaint/Defendants' Answer, p. 3.*

3. MO P&A is a non-profit public interest law center designated by the Governor of the State of Missouri and authorized to pursue legal, administrative, and other appropriate remedies on behalf of individuals with mental illness pursuant to *42 U.S.C. § 10801, et seq. Complaint/Defendants' Answer, p. 8.*

4. Defendant Dorn Schuffman is the Director of the Department of Mental Health of the State of Missouri. DMH has the responsibility of administering Missouri state institutions for persons with mental illness, including FSH. *Complaint/Defendants' Answer, p. 9.*

5. The State of Missouri receives federal funds under the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 6021-30, and thus, has in effect a system to protect and advocate the rights of individuals with developmental disabilities[.] *42 U.S.C. § 6042(a)*. MO P&A has been designated by state officials to be that system. As the "eligible system" under the PAIMI Act, see 42 U.S.C. 10802(2), MO P&A protects and advocates the rights of individuals with mental illness of the incidents are reported to the system..." *42 U.S.C. § 10803(2). Complaint/Defendants' Answer, p. 11*.

6. MO P&A requested the Mortality and Morbidity Report from James Impey, General

Counsel of DMH on or around May 15, 2002, via an undated letter because Mr. Riley was a resident of Fulton State Hospital when he died. *Complaint/Defendants' Answer, p. 18, Exhibit A.*

7. On May 29, 2002, a second letter was sent to Mr. Impey requesting the Mortality and Morbidity Report pertaining to Mr. Riley. *Complaint/Defendants' Answer, p.19, Exhibit B.*

8. Mr. Impey denied the request of MO P&A on June 4, 2002, stating that the Mortality and Morbidity Report "is a confidential, internal peer review document that is not available for distribution outside of the department." *Complaint/Defendants' Answer, p. 20. Exhibit C.*

9. MO P&A requested the Mortality and Morbidity Report through counsel on the basis that Mr. Riley was an individual with mental illness who died at Fulton State Hospital.

10. MO P&A also requested the Mortality and Morbidity Report on the basis that the Third Circuit had found that peer review records fall within the definition of records under the PAIMI Act. *Complaint/Defendants' Answer, p. 21, Exhibit D and E.*

## **RELEVANT LAW**

The purposes of the PAIMI Act, as stated by Congress, are "to ensure that the rights of individuals with mental illness are protected," and to:

> assist states to establish and operate a protection and advocacy system for individuals with mental illness which will (A) protect and advocate the rights of such individuals through activities to ensure the enforcement of the Constitutor and Federal and State statutes, and (B) investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred.

*42 U.S.C. §§ 10801(b)(1), (2)(A) and (B).*

In order to implement the above purpose, the PAIMI Act further provides for a protection and advocacy system to be established in every state. The protection and advocacy system is authorized under the PAIMI Act to investigate incidents of abuse and neglect of individuals with mental illness and to pursue administrative and other remedies to ensure protection from abuse and neglect of individuals with mental illness who receive care and treatment from the State. *42 U.S.C. § 10805(a)(1)(A) and (B).*

States that receive federal funds under the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 6021-30, are required to have in effect a system to protect and advocate the rights of individuals with developmental disabilities[.] *42 U.S.C. § 6042(a).* Once a state has received the funds, an eligible system is identified by state officials.

As an "eligible system" under the PAIMI Act, see 42 U.S.C. 10802(2), a protection and advocacy system protects and advocates the rights of individuals with mental illness of the incidents are reported to the system..." *42 U.S.C. § 10803(2).*

The PAIMI Act provides that protection and advocacy systems have access to all records of individuals with mental illness who are a client of the system and have authorized access to such records or any individual including an individual who has died by reason of the mental or physical condition of that individual is unable to authorize the system to have such access has no legal guardian and for which a complaint has been received or there is probable cause to believe the individual has been subject to abuse and/or neglect. *42 U.S.C. §10805(4)(A) and (B).* The records to which the eligible system has access are defined to include "reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that

described incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records." *42 U.S.C. § 10806(b)(3)(A).*

The PAIMI Act further addresses the issue of confidentiality. The PAIMI Act requires protection and advocacy systems to keep all records it receives confidential if the service provider from whom it receives the records is required to keep the records confidential. *42 U.S.C. § 10806(a).*

## ARGUMENT

## STANDARD OF REVIEW

A Motion for Summary Judgment can only be granted if, based upon the pleadings, admissions, deposition, and affidavits there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Board of Education v. Picoh,* 457 U.S. 853, 863 (1982). The moving party must demonstrate the absence of an issue for trial. *Celotex Corp. 477 U.S. at 323.* Further, judgment can be granted to the movant only if, after adequate time for discovery, the non-moving party fails to produce any proof to establish an element essential to the party's case and upon which a party will bear the burden of proof at trial. *Id. at 322-24.* Missouri Protection and Advocacy Services is entitled to summary judgment because there are no disputed facts regarding the request for the Mortality and Morbidity report from the Department of Mental Health and as a matter of law Missouri Protection and Advocacy Services is entitled to access such report.

**A. Failure to provide access to the Mortality and Morbidity Report.**

Defendants failure to provide MO P&A with the Mortality and Morbidity

Report based on their contention that the report "is a confidential peer review document not for release outside the department" is in violation of the PAIMI Act. MO P&A agrees that the Mortality and Morbidity Report is a peer review document. However, federal law provides that MO P&A must be granted access to the Mortality and Morbidity Report.

The PAIMI Act provides that the "eligible system" can access records of individuals with mental illness. Records as defined by the PAIMI Act include "reports prepared by any staff of a facility rendering care and treatment or reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at such facility that described incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents, and discharge planning records." *42 U.S.C. § 10806(b)(3)(A).*

The definition of records in the PAIMI Act include peer review documents. *Pennsylvania Protection and Advocacy, Inc. v. Houstoun,* 228 F.3d 423 (3rd Cir. 2000); *Center for Legal Advocacy v. Hammons,* 323 F.3d 1262 (10th Cir. 2003). In *Houstoun,* the Pennsylvania Protection and Advocacy, Inc. (Pennsylvania P&A) was seeking access to peer review reports concerning a death of an individual with mental illness who resided at a state hospital. The Department of Public Welfare denied Pennsylvania P&A access to the records they deemed to be peer review. The court found that peer review reports constitute records under the PAIMI Act stating, "they also fall squarely within the definition provided in § 10806 of the PAIMI Act." *Houstoun at* 426.

The issues before this court are the same as those in *Houstoun*. MO P&A requested records regarding the death of James Riley. Mr. Riley was a resident of FSH at the time of his death. FSH is a hospital for individuals with mental illness that is run by the Defendants. MO

P&A investigated the death of Mr. Riley, as it is authorized to do so under the PAIMI Act. As part of that investigation, MO P&A requested a copy of the Mortality and Morbidity Report. The report was not provided to MO P&A because it was deemed to be "a confidential, internal peer review document" by the Defendants. *Exhibit C.* As such, the Mortality and Morbidity Report would fall squarely under the definition of records in the PAIMI Act as defined by the *Houstoun* court. Under the *Houstoun* precedent, MO P&A must be provided with the Mortality and Morbidity Report.

Defendants further contend that the Mortality and Morbidity Report is confidential. The PAIMI Act addresses the issue of confidentiality. The PAIMI Act requires protection and advocacy systems to keep all records it receives confidential if the service provider from whom it receives the records is required to keep the records confidential. *42 U.S.C. § 10806(a).* MO P&A must exercise the same level of confidentiality as the service provider must maintain. In the situation at issue, MO P&A would not be able to distribute or publicize the Mortality and Morbidity Report any more than DMH could.

### B. Self-Critical Analysis Privilege

Defendants claim this suit is barred by the self-critical analysis privilege. *Defendants' Answer.* Defendants provide no analysis as to why the self-critical analysis privilege bars this action in their Answer. However, Defendants' claim is erroneous.

The Missouri Supreme Court addressed the self-critical analysis privilege in *State ex rel Faith Hospital v. Enright,* 706 S.W. 2d 852. One of the issues at bar in *Enright* was whether peer review documents were discoverable by Plaintiffs in a malpractice action. The underlying action involved allegations of medical malpractice by three physicians. *Id. at 853.* Plaintiffs in an

underlying action requested, among other records, peer review documents during discovery for the malpractice action. *Id. at 854.* The Missouri Supreme Court found that the plaintiffs in the underlying action could not access the records through discovery because "[t]he information plaintiffs desire falls squarely within the exemption from discovery created by the General Assembly in § 537.035.4, RSMo. The trial court is without authority to permit its discovery of that information sought by plaintiffs..." *Id. at* 855 .

In this case, MO P&A is not making a discovery request as part of a civil lawsuit. MO P&A is requesting the documents under its investigatory authority established in the PAIMI Act. MO P&A does not have a pending civil lawsuit in regard to any allegations of malpractice committed by defendants with respect to Mr. Riley's death. Thus, the self-critical analysis privilege does not apply and MO P&A must be provided access to the peer review documents it requested.

### C.     The Eleventh Amendment does not apply.

Defendants claim that they are protected from suit by the Eleventh Amendment. *Defendants' Answer.* Defendants provide no analysis as to why they are protected by the Eleventh Amendment in their Answer. However, the Defendants' claim is erroneous.

Defendants are not protected by the Eleventh Amendment in this case. The United States Supreme Court stated that a court can direct the affirmative action of a state official regarding his duty to perform. *Ex parte Young,* 209 U.S. 123, 28 S. Ct. 441. MO P&A is asking this court to direct an action of the Director of the Department of Mental Health in providing MO P&A with records it has requested. The PAIMI Act requires that MO P&A be given access to the request records. The Director need only to act in accordance with that federal law.

### D. The Complaint does not fail to state a claim on which relief can be given.

Defendants assert that MO P&A fails to state a claim on which relief can be granted. *Defendants' Answer.* Defendants provide no analysis as to why relief cannot be granted in their Answer. However, the Defendants' assertion is incorrect.

A complaint cannot be dismissed for failure to set a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson* 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957).

MO P&A is the protection and advocacy system for the state of Missouri. As the protection and advocacy system, MO P&A has the authority to access records of individuals with mental illness. MO P&A requested a copy of the Mortality and Morbidity Report. Defendants did not provide the Mortality and Morbidity Report because it "is a confidential, internal peer review document that is not available for distribution outside of the department." *Exhibit C*. Federal law and relevant case law provides that protection and advocacy systems do have the authority to access peer review documents. MO P&A has asked this court to compel Defendants to provide the Mortality and Morbidity Report relating to the death of James Riley to them. This court can fulfill this request through injunctive relief. Thus, there is a claim on which this court may grant relief.

## CONCLUSION

In light of the foregoing, there is no dispute as to the material facts in this case. Mr. Riley died at Fulton State Hospital. MO P&A requested the Mortality and Morbidity Report relating to Mr. Riley's death from Defendants. Defendants failed to provide the Mortality and Morbidity Report to MO P&A because they stated the document was a "confidential, internal peer review document." *Exhibit C*. The PAIMI Act provides that MO P&A has the authority to access the records of individuals with mental illness. The PAIMI Act and relevant case law provide that MO P&A has the authority to access peer review documents. The PAIMI Act further requires MO P&A to keep records it receives regarding individuals with mental illness confidential. Because there is no dispute as to the material facts and the law allows MO P&A to access the Mortality and Morbidity Report, MO P&A is entitled to summary judgment.

MO P&A requests this court to order the defendants to provide it with the requested Mortality and Morbidity Report.

Respectfully Submitted,

/S/ ERICA L. STEPHENS #51201
Staff Attorney
Missouri Protection and Advocacy Services
925 South Country Club Drive
Jefferson City, MO 65109
573-893-3333
573-893-4231 – Facsimile

ATTORNEY FOR COMPLAINANT

## CERTIFICATE OF SERVICE

  I hereby certify that a true and correct copy of the foregoing *Motion for Summary Judgment* was mailed, postage prepaid, by first class United States mail, to the party of record at the address set out below, on this 27th day of September, 2004:

Bart A. Matanic
Assistant Attorney General
Broadway State Office Building
221 West High Street
P.O. Box 899
Jefferson City, MO 65102

                /S/ ERICA L. STEPHENS